UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROMERO MONTE THOMAS,

               Plaintiff,                    Case No. 2:22-cv-138

v.                                      Honorable Maarten Vermaat

NATE HOFFMAN et al.,

               Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 3) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Hoffman. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment excessive force claims against Defendants Badu and Monville, as well as the following claims against remaining Defendants Jurva, Skytta, Lanctot, Monville, and Badu: Plaintiff's Eighth Amendment (i) failure-to-protect claims and (ii) conditions of confinement claims regarding the cleanliness of his cell and his delayed receipt of a bed roll. Plaintiff's motion to amend (ECF No. 7) to correct the first name of Defendant Skytta will be granted.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

## Discussion

I.     **Plaintiff's Motion to Amend**

After Plaintiff filed his complaint, he filed a motion to amend, requesting to change the first name of Defendant Skytta to "Mark." (ECF No. 7, PageID.91–92.) Plaintiff explains that he received "bad information" and mistakenly thought that Defendant Skytta's first name was "Tim" when it is in fact "Mark." (*Id.*, PageID.92.) Upon consideration of Plaintiff's motion to amend, the Court will grant the motion and will direct the Clerk to update Defendant Skytta's first name on the docket.

II.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF officials: Deputy Warden Nate Hoffman; Sergeant L. Jurva; Correctional Officers Mark Skytta and N. Lanctot; Nurse Jamie Monville; and Captain Unknown Badu. (Compl., ECF No. 1, PageID.1–4; *see* ECF No. 7, PageID.91–92.)

In Plaintiff's complaint, he alleges that on January 29, 2021, Residential Unit Manager Perttu (not a party) ordered that Plaintiff be sent to segregation because Perttu had issued Plaintiff a class I misconduct ticket for threatening behavior. (Compl., ECF No. 1, PageID.21–22, 38.) Thereafter, Defendant Jurva and Badu came to Plaintiff's cell with a "home video camcorder." (*Id.*, PageID.23.) Plaintiff "beg[ged] and plead[ed] his case," explaining that Residential Unit Manager Perttu refused to staple his legal documents and mail his legal mail, but "his words fell upon deaf ears." (*Id.*) Plaintiff then requested permission to bring the "most important documents to his lawsuit" with him to segregation. (*Id.*) Defendant Jurva ordered Plaintiff to "cuff up," and Plaintiff responded that "he couldn't leave without his legal documents and again requested to

bring a few documents en route to segregation." (*Id.*, PageID.24.) Defendants Jurva and Badu conferred to determine whether Plaintiff should be permitted to bring the documents, and they decided to ask Defendant Hoffman. (*Id.*)

A couple of hours later, Defendant Badu returned to Plaintiff's cell with the video camcorder, and Defendant Jurva returned in "full riot gear with a helmet" and visor. (*Id.*, PageID.25.) Several other officers dressed in riot gear also came to Plaintiff's cell. (*Id.*, PageID.26.) Plaintiff removed "his shoes, socks, pants, and t-shirt" to show that he was not a threat "to [him]self or society." (*Id.*) Plaintiff used "a clean towel that he held in hand" to cover his exposed skin. (*Id.*) Defendant Jurva "threatened to spray Plaintiff" with a chemical agent, "allegedly at the instruction of [Defendant] Hoffman," if Plaintiff did not come to the door to "cuff up." (*Id.*, PageID.27.) Plaintiff claims that he did not obstruct the view into his cell and that the only thing he had in his hands was his towel. (*Id.*) Defendant Jurva then opened the slot on Plaintiff's cell, and Defendants Skytta and Lanctot "approached the cell door with a breaching tool." (*Id.*, PageID.28.) Thereafter, either both Defendants Skytta and Lanctot or one of them "rammed the tool through the top slot . . . striking Plaintiff in the groin causing Plaintiff to immediately lounge [sic] forward." (*Id.*)

Defendant Jurva then sprayed a chemical agent, which Plaintiff contends was "bear spray," in Plaintiff's cell. (*Id.*, PageID.28–29.) Plaintiff contends that the cell floor was covered and became slippery, "causing Plaintiff to slip and fall several times." (*Id.*, PageID.29–30.) Plaintiff's allergies then "fl[ared] up" because of the chemical spray, which made it harder for him to breath, and he also had "hives and welts" on his body. (*Id.*, PageID.30.) Defendant Jurva ordered Plaintiff "to come to the door and to cuff up." (*Id.*) "Plaintiff was able to gain his balance and approached the cell door," but Defendant Jurva "was making it seem like the Plaintiff was non-compliant and

began reciting the same order over and over as if he was sadistically enjoying watching Plaintiff's suffocation from the fumes as Plaintiff explained that he couldn't breath and wanted out of the cell." (*Id.*, PageID.30–31.) Thereafter, Plaintiff alleges Defendant Jurva ordered Plaintiff to remove his underwear and squat, and then ordered Plaintiff to put on a jumpsuit. (*Id.*, PageID.31.) After leg and wrist restraints were placed on Plaintiff, he was "placed in a wheeled restraint chair." (*Id.*, PageID.31–32.)

Plaintiff was taken to "a room within the housing unit specifically designated for in[-]house health care in tow of a train of officers consisting of Jurva, Lanctot, Skytta, Carrol [(not a party)], and Badu." (*Id.*, PageID.32.) Defendant Monville "checked simultaneously" Plaintiff's blood pressure. (*Id.*) Plaintiff begged Defendant Monville "to authorize and instruct the officers to allow a shower for Plaintiff to get the chemicals off of his body." (*Id.*, PageID.33.) Plaintiff claims that Defendant Monville "refused to give his authorization, . . . so Plaintiff appealed to Badu, Jurva, Skytta, and Lanctot to allow him a shower from the time he was being hauled out of health care and immediately confined to a segregated cell, but to no avail." (*Id.*)

Plaintiff was placed in a cell on A-wing of Unit 2, which Plaintiff states is a wing for "prisoners with all type[s] of mental and physical health issues and always smell[s] of fecal matter and urine." (*Id.*) Plaintiff claims that the cell in which he was placed "had a consistent stench of fecal matter and urine an[d] was not clean as hair, dust, and lint lit[t]ered the cell floor and Plaintiff's bunk bed space." (*Id.*, PageID.34.) Plaintiff also claims that the "throat of the commode was coated in heavy fecal matter because on cell cleaning days staff provide[] segregated inmates with a pony brush," rather than a toilet wand. (*Id.*) Additionally, Plaintiff was not provided a bed roll until between midnight and 3:00 a.m., and he was not allowed a shower "until the next scheduled shower day for segregated inmates." (*Id.*)

The next day, January 30, 2021, Plaintiff received a class II misconduct ticket for disobeying a direct order, which Defendant Jurva had issued, because Plaintiff would not move to the segregation unit "without [his] property" when he was given a direct order to move due to the issuance of his initial class I misconduct ticket. (*Id.*, PageID.35.) Subsequently, Plaintiff pleaded guilty to the class two misconduct charge and received five days' loss of privileges. (*Id.*) On February 4, 2022, Correctional Officers Massie and Lorendo (non-parties) did not allow Plaintiff to attend the hearing for his class I misconduct charge, and he was found guilty of threatening behavior against Residential Unit Manager Perttu (not a party). (*Id.*, PageID.36.)

Plaintiff claims that after he was "struck in the groin by [Defendants] Skytta or Lanctot" and sprayed by Defendant Jurva "with bear spray," for fifteen months "day and night," Plaintiff "experience[d] discomfort in his genitals." (*Id.*) Plaintiff also claims that on May 18, 2022, an ultrasound showed that he "had epididymal cysts." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment when they used excessive force against him, failed to protect him from this force, and subjected him to unconstitutional conditions of confinement. (*See id.*, PageID.38–42.) Plaintiff seeks compensatory, punitive, and nominal damages, reimbursement for fees and costs, and injunctive relief. (*See id.*, PageID.38–48.)

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

7

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this action, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).

8

A.      **Defendant Hoffman**

Plaintiff claims that Defendants Jurva and Badu decided to ask Defendant Hoffman about whether Plaintiff would be permitted to bring his legal documents with him to segregation. (Compl., ECF No. 1, PageID.24.) Plaintiff further claims that after Defendants Jurva and Badu returned to his cell a couple of hours later, Defendant Jurva "threatened to spray Plaintiff" with a chemical agent, "allegedly at the instruction of [Defendant] Hoffman," if Plaintiff did not come to the door to "cuff up." (*Id.*, PageID.27.)

To the extent that Plaintiff seeks to hold Defendant Hoffman liable for the actions of his subordinates, a government official, such as Defendant Hoffman, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff alleges in a conclusory manner that Defendant Jurva "threatened to spray Plaintiff" with a chemical agent, "allegedly at the instruction of [Defendant] Hoffman," if Plaintiff did not come to the door to "cuff up." (Compl., ECF No. 1, PageID.27.) However, Plaintiff fails to allege any facts showing that Defendant Hoffman had any active involvement in the alleged violations of Plaintiff's constitutional rights. Further, Plaintiff fails to allege any facts showing that Defendant Hoffman encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct.

Specifically, Plaintiff does not allege (i) that Defendant Hoffman was present when the chemical agent was sprayed, (ii) that Defendant Hoffman was able to see the incident in some manner, such as from a distance or on a monitor, or (iii) that Defendant Hoffman knew that the chemical agent was in fact going to be used. Simply because Plaintiff believes that Defendant Hoffman may have authorized the use, as needed, of chemical spray does not mean that Defendant Hoffman knew that the chemical agent would be used. Instead, such authorization means that the Defendants extracting Plaintiff from his cell had the ability to use a chemical agent; however, Defendant Hoffman did not know if the chemical agent would in fact be used. Indeed, the use of the chemical agent depended on Plaintiff's interaction with the officers who went to Plaintiff's cell *after* the alleged discussion with Defendant Hoffman, so Defendant Hoffman had no way of knowing what the officers at Plaintiff's cell would do, or did, during their interaction with Plaintiff. Furthermore, because Defendant Hoffman did not observe or have "reason to know that excessive force would be or was being used," he necessarily did not have "the opportunity and the means to

prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

For these reasons, Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Hoffman was personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendant Hoffman engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against him. Therefore, Plaintiff's claims against Defendant Hoffman will be dismissed.

## B.    Excessive Force Claims

Plaintiff claims that the remaining Defendants—Defendants Jurva, Skytta, Lanctot, Monville, and Badu—used excessive force against him in violation of the Eighth Amendment.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

11

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

In this action, Plaintiff alleges that on January 29, 2021, after Plaintiff was ordered to go to segregation due to the issuance of a class I misconduct ticket, Plaintiff advised Defendants Jurva and Badu that "he couldn't leave without his legal documents" and "requested to bring a few documents en route to segregation." (Compl., ECF No. 1, PageID.24, 38.) Subsequently, Defendant Badu returned to Plaintiff's cell with the video camcorder, and Defendant Jurva and

several other officers returned in "full riot gear." (*Id.*, PageID.25.) Plaintiff removed "his shoes, socks, pants, and t-shirt," to show that he was not a threat "to [him]self or society." (*Id.*) Plaintiff used a "clean towel that he held in hand" to cover his exposed skin. (*Id.*) Defendant Jurva "threatened to spray Plaintiff" with a chemical agent if Plaintiff did not come to the door to "cuff up." (*Id.*, PageID.27.) Plaintiff claims that he did not obstruct the view into his cell and only held his towel in his hands. (*Id.*) Defendant Jurva then opened the slot on Plaintiff's cell, and Defendants Skytta and Lanctot "approached the cell door with a breaching tool." (*Id.*, PageID.28.) Thereafter, "both officers or either a single officer then rammed the tool through the top slot . . . striking Plaintiff in the groin causing Plaintiff to immediately lounge [sic] forward." (*Id.*) Defendant Jurva then sprayed a chemical agent, which Plaintiff contends was "bear spray," in Plaintiff's cell. (*Id.*, PageID.29.) Subsequently, after Plaintiff was removed from his cell, he was taken first to a room for "in[-]house health care," and he begged Defendant Monville "to authorize and instruct the officers to allow a shower for Plaintiff to get the chemicals off of his body," but Defendant Monville "refused to give his authorization." (*Id.*, PageID.33.)

### 1. Defendants Badu & Monville

With respect to Plaintiff's allegations against Defendant Badu, Plaintiff alleges that Defendant Badu recorded Plaintiff's interaction with the other officers using a video camera (*see, e.g.*, Compl., ECF No. 1, PageID.25, 27, 32); however, Plaintiff's allegations do not suggest that Defendant Badu himself used any force against Plaintiff. Similarly, with respect to Defendant Monville, Plaintiff alleges that Defendant denied Plaintiff's request for a shower, but Plaintiff does not allege that Defendant Monville used any force against Plaintiff. (*See, e.g.*, *id.*, PageID.33.) Indeed, Plaintiff does not allege that Defendant Monville was present when the breaching tool and chemical spray were used.

To the extent that Plaintiff intended to claim that Defendant Badu used excessive force against him simply because Defendant Badu was present when the breaching tool and chemical agent were used, Plaintiff fails to state such a claim. Plaintiff also fails to state an excessive force claim against Defendant Monville because Plaintiff does not allege that Defendant Monville used any force against him.

As discussed above, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff does not allege that Defendants Badu and Monville used excessive force against him. Plaintiff therefore cannot maintain an excessive force claim against them.

### 2. Defendants Jurva, Skytta & Lanctot

As to Defendants Jurva, Skytta, and Lanctot, Plaintiff alleges that although he initially refused to go to segregation without some of his legal documents, once Defendants arrived at Plaintiff's cell in full riot gear, Plaintiff removed his clothing to show that he was not a threat and he did not obstruct the view into his cell. Despite taking these steps to show that he was not a threat, Plaintiff alleges that Defendants Jurva, Skytta, and Lanctot used excessive force against him by using a breaching tool and chemical spray, which Plaintiff claims was bear spray. At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, Plaintiff's Eighth Amendment excessive force claims against Defendants Jurva, Skytta, and Lanctot may not be dismissed on initial review.

### C. Failure-to-Protect Claims

Plaintiff alleges that Defendants Jurva, Skytta, Lanctot, Monville, and Badu showed deliberate indifference when they failed to protect him from the force that was used against him.

14

Case 2:22-cv-00138-MV ECF No. 9, PageID.111 Filed 11/09/22 Page 15 of 22

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson*, 468 U.S. at 526–27). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

An officer or other prison official is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess*, 735 F.3d at 475 (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

### 1. Defendant Monville

Plaintiff alleges that after Defendants Jurva, Skytta, Lanctot, and Badu removed Plaintiff from his cell, he was taken to a room for in-house healthcare, and Defendant Monville checked his

blood pressure. (Compl., ECF No. 1, PageID.32.) Plaintiff also alleges that Defendant Moville denied Plaintiff's request for a shower. (*See id.*, PageID.33.)

Plaintiff does not allege the Defendant Monville was present when the other Defendants used force against him, or that Defendant Monville had any knowledge that force was—or would be—used against Plaintiff. Under these circumstances, nothing in the complaint suggests that Defendant Monville observed or had "reason to know that excessive force would be or was being used," and therefore, Defendant Monville necessarily did not have "the opportunity and the means to prevent the harm from occurring." *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429). Accordingly, Plaintiff fails to state an Eighth Amendment failure-to-protect claim against Defendant Monville, and this claim will be dismissed.

### 2.      Defendants Jurva, Skytta, Lanctot & Badu

Plaintiff alleges that Defendants Jurva, Skytta, Lanctot, and Badu were present when Defendants Skytta and Lanctot used a "breaching tool" and when Defendant Badu used a chemical agent to remove Plaintiff from his cell. (Compl., ECF No. 1, PageID.27–29.)

Assuming that these Defendants "had reason to know that excessive force would be" used by any of the other Defendants, Plaintiff fails to provide any allegations from which the Court could conclude that they "had both the opportunity and the means to prevent the harm from occurring." *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429). Plaintiff's allegations do not suggest that the use of the breaching tool and the chemical spray occurred over a lengthy period of time; instead, the allegations suggest that the use of force occurred quickly. The United States Court of Appeals for the Sixth Circuit has held that "where the 'act of excessive force unfolds in a matter of seconds, the second requirement [i.e., having both the opportunity and the means to prevent the harm] is generally not satisfied.'" *Alexander*, 733 F. App'x at 265 (quoting *Pennington v. Terry*, 644 F. App'x 533, 548 (6th Cir. 2016)); *see Ontha v. Rutherford Cnty.*, 222 F. App'x

16

498, 506 (6th Cir. 2007) (collecting cases). The Sixth Circuit's reasoning for this determination is "that it demands too much of officers to require that they intervene within a sudden and quickly-expired moment of opportunity." *Pennington*, 644 F. App'x at 548 (citing *Ontha*, 222 F. App'x at 506).

Here, Plaintiff fails to allege facts suggesting that the incident with Defendants lasted long enough for any of them to both perceive what was going on and intercede to stop any of the other Defendants' use of force. Accordingly, Plaintiff fails to state an Eighth Amendment failure-to-protect claim against Defendants Jurva, Skytta, Lanctot, and Badu.

### D.    Claims Regarding the Denial of a Shower, Cleanliness of Cell & Receipt of a Bed Roll

Plaintiff's allegations regarding the denial of a shower, the conditions of his cell upon his placement in segregation, and his delayed receipt of a bed roll also implicate the protections of the Eighth Amendment. (*See, e.g.*, Compl., ECF No. 1, PageID.33–34.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

## 1.   Denial of a Shower

Plaintiff alleges after he was removed from his cell, in which a chemical agent had been sprayed, Plaintiff requested that he be allowed to shower "as he was experiencing pain as well a[s] a burning sensation all over his body and genitals," but Defendant Monville "refused to give his authorization." (Compl., ECF No. 1, PageID.33.) Plaintiff then "appealed to [Defendants] Badu, Jurva, Skytta, and Lanctot to allow him a shower from the time he was being hauled out of health care and immediately confined to a segregated cell, but to no avail." (*Id.*) Plaintiff states that he did not receive a shower "until the next scheduled shower day for segregated inmates." (*Id.*, PageID.34.) Plaintiff does not indicate the date of the "next scheduled shower day." (*See id.*)

The Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Although Plaintiff has by no means proven deliberate indifference, taking Plaintiff's allegations as true and in the light most favorable to him, Plaintiff's allegations suggest

that he was unable to maintain hygiene after he was sprayed with a chemical agent. The Court therefore may not dismiss on initial review Plaintiff's claim regarding the denial of a shower by Defendants Monville, Badu, Jurva, Skytta, and Lanctot after Plaintiff was sprayed with a chemical agent and was experiencing "pain as well a[s] a burning sensation all over his body and genitals." (*See id.*)

### 2.    Cleanliness of Cell & Receipt of a Bed Roll

Plaintiff also alleges that after he was removed from his cell, he was placed in a cell on A-wing of Unit 2, which Plaintiff states is a wing for "prisoners with all type[s] of mental and physical health issues and always smell[s] of fecal matter and urine." (*Id.*, PageID.33.) Plaintiff claims that the cell "had a consistent stench of fecal matter and urine an[d] was not clean as hair, dust, and lint lit[t]ered the cell floor and Plaintiff's bunk bed space." (*Id.*, PageID.34.) Plaintiff also claims that the "throat of the commode was coated in heavy fecal matter because on cell cleaning days staff provide[] segregated inmates with a pony brush," rather than a toilet wand. (*Id.*) Additionally, after being placed in his new cell, Plaintiff states that he was not provided a bed roll until between midnight and 3:00 a.m. (*Id.*)

As explained below, with respect to Plaintiff's allegations regarding the cleanliness of his cell in segregation and his delayed receipt of a bed roll, Plaintiff fails to allege any facts to suggest that these deprivations were anything other than temporary inconveniences, and allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)).

As an initial matter, to the extent Plaintiff intended to allege that Defendants are liable for the conditions of his confinement during the entire period in which he was housed in segregation, Plaintiff's allegations only show that Defendants Jurva, Skytta, Lanctot, and Badu were involved in Plaintiff's initial placement in segregation. Plaintiff does not allege that Defendant Monville had any involvement in Plaintiff's placement in segregation.

With respect to Plaintiff's initial placement in the cell in segregation, although Plaintiff alleges that the cell in which he was placed was dirty, "had a consistent stench of fecal matter and urine," and there was "heavy fecal matter" in the "throat of the commode" (Compl., ECF No. 1, PageID.34), Plaintiff does not allege that he advised Defendants of the conditions of his cell, and he does not allege that he was subjected to these conditions for an extended period of time. Indeed, Plaintiff provides no allegations regarding the duration of his confinement in this cell. Further, Plaintiff also does not allege that he was denied cleaning supplies to clean his cell. Under these circumstances, while the conditions described by Plaintiff upon his initial placement in the cell are certainly unpleasant, Plaintiff fails to allege any facts to suggest that he was forced to live in inhumane conditions for an extended period of time. *See Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration" (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (emphasis in original))). *But see Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation

20

of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (concluding that a prisoner who alleged that he was forced to remain in a cell covered in fecal matter for three days stated a claim under the Eighth Amendment).

As to Plaintiff's allegations regarding his delayed receipt of a bed roll, Plaintiff's allegations suggest that, at most, Plaintiff was housed without a bed roll from some time between "noon and 1:00 p.m." until "twelve and three a.m." (Compl., ECF No. 1, PageID.25, 34.) Courts have routinely found that the deprivation of a mattress for a few days does not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Lee v. Wagner*, No. 1:17-cv-474, 2017 WL 2608752, at *4 (W.D. Mich. June 16, 2017) ("The level of discomfort and injury one might expect a prisoner to suffer by virtue of sleeping without a mattress for a few days simply cannot support a claim that the prisoner has been denied 'the minimal civilized measure of life's necessities.'" (quoting *Rhodes*, 452 U.S. at 347)); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Schroeder v. Kaplan*, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (concluding that requiring a prisoner to sleep on the floor for a four-week period without a mattress does not violate the Eighth Amendment). Therefore, Plaintiff's assertion that he was denied a bed roll for less than a day fails to state an Eighth Amendment claim.

Accordingly, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment conditions of confinement claim against Defendants Jurva, Skytta, Lanctot, Monville, and Badu regarding the cleanliness of his cell and his delayed receipt of a bed roll.

## <u>Conclusion</u>

The Court will grant Plaintiff's motion to amend (ECF No. 7) to correct the first name of Defendant Skytta. Further, having conducted the review required by the Prison Litigation Reform

Act, the Court determines that Defendant Hoffman will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment excessive force claims against Defendants Badu and Monville, as well as the following claims against remaining Defendants Jurva, Skytta, Lanctot, Monville, and Badu: Plaintiff's Eighth Amendment (i) failure-to-protect claims and (ii) conditions of confinement claims regarding the cleanliness of his cell and his delayed receipt of a bed roll. Plaintiff's Eighth Amendment excessive force claims against Defendants Jurva, Skytta, and Lanctot remain in the case. Additionally, Plaintiff's Eighth Amendment claims against Defendants Jurva, Skytta, Lanctot, Monville, and Badu regarding the denial of a shower after he was sprayed with a chemical agent remain in the case.

An order consistent with this opinion will be entered.


Dated:    November 9, 2022                        /s/ Maarten Vermaat
                                                  Maarten Vermaat
                                                  United States Magistrate Judge